IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JEFFERY MARTIN SIERZEGA,<br><br>            Plaintiff,<br><br>   v.<br><br>PRO TEM JUDGE LYNN E. ASH-<br>CROFT, JUDGE JOSEPH C.<br>GUIMOND, JUDGE ALBIN W. NOR-<br>BLAD, PRESIDING JUDGE PAUL J.<br>LIPSCOMB, COURT REPORTER<br>TRISHA ROHLFING, MARION COUNTY<br>DEPUTY SHERIFF WELTY, MARION<br>COUNTY DEPUTY SHERIFF DOUGALL,<br>MARION COUNTY DEPUTY SHERIFF<br>McDERMITT, MARION COUNTY<br>DEPUTY SHERIFF BERNARD, SALEM<br>POLICE DEPT. OFFICER ERIC<br>MOFFITT, SALEM POLICE DEPT.<br>CORPORAL J. HUMPHRIES, SALEM<br>POLICE DEPT. CORPORAL M. SEY-<br>FRIED, SALEM POLICE DEPT. SER-<br>GEANT D. CARPENTER, IN THEIR<br>OFFICIAL AND INDIVIDUAL CAPA-<br>CITIES, MARION COUNTY, CITY<br>OF SALEM, DR. JEFFREY<br>PHILLIPS, DMD, JOHN/JANE DOE<br>DEFENDANTS 1-4,<br><br>            Defendants. | No. CV-05-1338-HU<br><br><br><br>FINDINGS & RECOMMENDATION |

/ / /

/ / /

1 - FINDINGS & RECOMMENDATION

Jeffery Martin Sierzega
6712 Lardon Road, N.E.
Salem, Oregon 97305

    Plaintiff Pro Se

Hardy Myers
ATTORNEY GENERAL
Liani J. H. Reeves
ASSISTANT ATTORNEY GENERAL
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

    Attorneys for Defendants Lipscomb, Guimond, Ashcroft,
        Norblad, and Rohlfing

Kim E. Hoyt
Spencer C. Rockwell
GARRETT, HEMANN, ROBERTSON,
JENNINGS, COMSTOCK & TRETHEWY, P.C.
1011 Commercial Street, N.E.
P.O. Box 749
Salem, Oregon 97308

    Attorneys for Defendant Jeffrey C. Phillips, DMD

HUBEL, Magistrate Judge:

    Plaintiff Jeffery Sierzega brings this civil rights action against several Marion County Circuit Court judges, a court reporter, several Marion County deputy sheriffs, several City of Salem police officers, Marion County, and the City of Salem. He also brings claims against a dentist, Dr. Jeffrey Phillips, DMD.

    Presently, Phillips, the Marion County judges, and the court reporter move to dismiss the claims against them. I recommend that Phillips's motion be denied, and that the separate motion by the judicial officers and the court reporter be granted in part and denied in part.

## BACKGROUND

    Plaintiff's lengthy Amended Complaint begins with allegations that in August 2005, he contacted Phillips by telephone to obtain

2 - FINDINGS & RECOMMENDATION

1  information regarding treatment that Phillips had provided to
2  plaintiff's child.  Am. Compl. at ¶ 21.  Plaintiff contends that
3  Phillips then conspired with defendant police officer Seyfried and
4  his superiors with the Salem Police Department, to fabricate facts
5  constituting probable cause to support the issuance of an Oregon
6  Uniform Stalking Citation against plaintiff.  Id. at ¶ 22.

7  Plaintiff states that the stalking citation was served on him
8  on August 9, 2005, and that Seyfried and defendant police officer
9  Carpenter knowingly and intentionally misinformed plaintiff that he
10 was required to make a personal appearance on August 12, 2005, to
11 answer the citation.  Id. at ¶¶ 24, 25.

12 Plaintiff contends that on August 12, 2005, he personally
13 appeared at 11:30 a.m. as specified in the stalking citation only
14 to be advised by defendant court reporter Rohlfing to make an
15 appearance at 1:30 p.m. instead.  Id. at ¶ 29.  He states that he
16 filed a motion "for change of judge" while waiting for the 1:30
17 p.m. hearing, based on his "reasonable belief that he cannot have
18 a fair or impartial hearing before any judge whose identity is
19 being kept a secret from him by the trial court."  Id. at ¶ 30.

20 Plaintiff alleges that he provided defendant Pro Tem Judge
21 Ashcroft with a certified, file- and date-stamped copy of the
22 recusal  motion when the 1:30 hearing began, but Judge Ashcroft did
23 not recuse himself.  Id. at ¶ 31.

24 Plaintiff states that Judge Ashcroft and defendant Presiding
25 Judge Lipscomb then arranged with defendants sheriff deputies Welty
26 and Dougall, before the hearing began, to have plaintiff handcuffed
27 and removed from the courtroom during a twenty-minute recess.  Id.
28 at ¶ 32.  Next, according to plaintiff, Judge Ashcroft then ordered

3 - FINDINGS & RECOMMENDATION

plaintiff's handcuffs removed and gave plaintiff a written assignment for a hearing before defendant Judge Norblad on August 30, 2005. Id. at ¶ 33. Judge Ashcroft also allegedly gave plaintiff a Temporary Stalking Protective Order. Id. at ¶ 34. The temporary order allegedly bears the signature of defendant Judge Guimond. Id. at ¶ 35. Plaintiff contends that Judge Ashcroft forged Judge Guimond's signature with Judge Lipscomb's permission during the recess called by Judge Ashcroft. Id. He further contends that Judge Ashcroft signed Judge Guimond's name on the order with Rohlfing's pen. Id. He also contends that Rohlfing tampered with the taped transcript of the proceedings and deleted three large sections of tape containing incriminating language spoken by Judge Ashcroft. Id.

Shortly thereafter, plaintiff filed a motion to recuse Judge Norblad and then filed a request for access to his case file. Id. at ¶¶ 37, 38. He also subpoenaed certain records from the City of Salem's Chief of Police. Id. at ¶ 39. The City moved to quash the subpoena. Id. Plaintiff then filed a motion to vacate, amend, and dismiss the temporary stalking order "purportedly signed by" Judge Guimond on August 12, 2005. Id. at ¶ 41.

On August 30, 2005, plaintiff appeared before Judge Norblad. Id. at ¶ 42. Judge Norblad was then apprised of the recusal motion. Id. at ¶ 44. He allegedly allowed the motion and "order[ed] plaintiff to wait out in the hall while another judge is assigned to plaintiff's case and another hearing is schedualed [sic]." Id.

Apparently, after waiting for ten minutes, plaintiff and his witnesses decided to leave. Id. at ¶ 45. As plaintiff and his

4 - FINDINGS & RECOMMENDATION

mother were driving home, "their vehicle [was] blocked" by defendants sheriff deputies Bernard and McDermitt who ordered plaintiff to accompany them back to the courthouse. Id. at ¶ 46. Upon his return to the courthouse, Judge Norblad allegedly informed plaintiff that Judge Lipscomb had assigned the case to himself and would conduct a hearing that morning. Id. at ¶ 47.

At the beginning of the hearing before Judge Lipscomb, plaintiff informed Judge Lipscomb that the previous day, plaintiff had filed this civil rights action against Judge Lipscomb. Id. at ¶ 49. Judge Lipscomb allegedly denied plaintiff's request that Judge Lipscomb disqualify himself from hearing the case. Id.

Plaintiff alleges that in the stalking order proceeding, the police reports and sworn statements by Phillips were perjured and fail to constitute probable cause. Id. at ¶ 52. He further contends that he was not allowed to cross-examine Phillips or to call any witnesses to testify on his behalf. Id. at ¶ 53. Nonetheless, plaintiff contends that Judge Lipscomb vacated the orders purportedly entered by Judge Guimond. Id. at ¶ 56.

Plaintiff states that he was ordered to submit to a mental health evaluation by a health-care provider of his own choice within ten days and that "the PSPO" (which I understand to be a permanent stalking order), be entered. Id. at ¶ 58. Plaintiff further states that on September 9, 2005, he filed proof of compliance with the order regarding the mental health evaluation. Id. at ¶ 62. Later in September, plaintiff moved to modify the PSPO to allow service of a Notice of Appeal on Phillips. Id. at ¶ 62.

On September 26, 2005, Judge Lipscomb recused himself from the

5 - FINDINGS & RECOMMENDATION

case and assigned Judge Ochoa to the case for the hearing on the motion to modify. Id. at ¶ 63. On October 5, 2005, plaintiff alleges that the Court Records Division of the Oregon Court of Appeals "fabricate[d] the date of filing of plaintiff's timely filed Notice of Appeal as 5 October 2005 instead of 29 September 2005[,]" and sent plaintiff a letter assigning plaintiff an appellate case number and giving plaintiff fourteen days to file proof of service of the Notice of Appeal on Phillips. Id. at ¶ 65.

Also on October 5, 2005, plaintiff alleges that Oregon Court of Appeals Judge Mary Deits entered an order "dismissing plaintiff's appeal as being untimely filed with no showing that plaintiff's Notice of Appeal was not filed on 29 September 2005." Id. at ¶ 66.

Plaintiff contends that his request for a copy of the taped transcript of the proceedings held August 12, 2005, and August 30, 2005, was denied, based on a standing order of Judge Lipscomb's to the effect that the written transcript, when certified by the court reporter, is the official record, and that the original recording is not provided to anyone except officers of the court, with a further restriction that no further or unauthorized copying will be allowed. Id. at ¶ 67.

## STANDARDS

On a motion to dismiss, the court must review the sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court should construe the complaint most favorably to the pleader:

> In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that the complaint should not be dismissed for failure to state a claim

6 - FINDINGS & RECOMMENDATION

1  unless it appears beyond doubt that the plaintiff can
2  prove no set of facts in support of his claim which would entitle him to relief.

3  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); American Family Ass'n,
4  Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120 (9th
5  Cir. 2002). The allegations of material fact must be taken as
6  true. Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994). However,
7  the court need not accept conclusory allegations as truthful.
8  Holden v Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

## DISCUSSION

Based on the facts as outlined above, plaintiff brings the following claims: (1) "Count I": a claim under 42 U.S.C. § 1983 for conspiracy to maliciously prosecute; Am. Compl. at ¶¶ 73-77; (2) "Count II": a claim under 42 U.S.C. § 1983 for violation of equal protection of the laws; Am. Compl. at ¶¶ 78-80; (3) "Count III": a claim under 42 U.S.C. § 1983 for unlawful arrest, search, and seizure; Am. Compl. at ¶¶ 81-86; (4) "Count IV": a claim under 42 U.S.C. § 1983 for conspiracy to maliciously abuse process; Am. Compl. at ¶¶ 86-90; (5) "Count V": a claim under 42 U.S.C. § 1983 for violation of the right to a fair and impartial hearing; Am. Compl. at ¶¶ 91-97; (6) "Count VI": a claim under 42 U.S.C. § 1983 for unlawful arrest, seizure, and detention; Am. Compl. at ¶¶ 98-104; and (7) "Count VII": claims for forgery, abuse of process, malicious prosecution, and tampering with court records. Am. Compl. at ¶¶ 105-112. Additionally, plaintiff "reserves" several "counts" for other claims such as intentional infliction of emotional distress, negligence, and false arrest, seizure, and detention. Am. Compl. at p. 21.

/ / /

7 - FINDINGS & RECOMMENDATION

I.   Phillips's Motion to Dismiss

Phillips moves to dismiss Counts I - VI for failure to state a claim, and to dismiss Count VII for lack of jurisdiction.

A.   Counts I - VI

These "counts" are all brought under section 1983. To establish a violation of section 1983, plaintiff must prove that defendants acted under color of state law and deprived plaintiff of a federal constitutional or statutory right. Dawson v. City of Seattle, 435 F.3d 1054, 1061 (9th Cir. 2006); Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002). Section 1983 "is the vehicle whereby plaintiffs can challenge actions by governmental officials." Henderson, 305 F.3d at 1056.

Phillips moves to dismiss the section 1983 claims against him because plaintiff fails to allege that he was employed by the Marion County Sheriff's Department, the Salem Police Department, or the State of Oregon in any capacity.[1]  Phillips further notes that plaintiff has failed to allege that Phillips acted under the color of state law.

Plaintiff alleges that Phillips is a pediatric dentist. Am. Compl. at ¶ 19.  The Amended Complaint contains no allegations

---

[1] Phillips inappropriately frames his argument as one based on the fact that he was never employed by Marion County, the City of Salem, or the State of Oregon. He goes so far as to submit an affidavit attesting to the fact of his non-employment with these entities. On a Rule 12(b)(6) motion, the only relevant facts are what are pleaded in the Complaint or Amended Complaint. Thus, whether Phillips was or is employed by any of the three governmental bodies who are defendants in this case is beside the point. At this stage of the case, it is only what plaintiff has alleged that matters. Moreover, because my analysis of the motion is confined to the allegations in the Amended Complaint, I disregard Phillips's affidavit.

8 - FINDINGS & RECOMMENDATION

capable of suggesting that Phillips is a government official. Additionally, there is no allegation that Phillips acted under color of state law.

In response to the motion, plaintiff notes that he has alleged that Phillips conspired with the other named defendants to deprive him of his constitutional rights. Specifically, he refers to his allegations that Phillips supplied perjured sworn statements to City of Salem police officers to "fabricate evidence in their attempts to manufacture probable cause" for the issuance of the stalking citations against plaintiff. Pltf's Opp. Mem. at p. 2.

The relevant facts as alleged in the Amended Complaint are that "[o]n 7 August 2005 defendant Phillips conspired with defendant Cpl. M. Seyfried and his superiors at Salem Police Dept. to fabricate probable cause for the issuance of a fraudulent Oregon Uniform Stalking Citation against plaintiff based on the perjured sworn statements of defendant Phillips and the falsified police reports of defendants SPD Cpl. J. Humphries, Off. C. Moffitt, Cpl. M. Seyfried, and Sgt. D. Carpenter[.]" Am. Compl. at ¶ 22.

"Count I," alleging a conspiracy to maliciously prosecute, is the only "count" mentioning Phillips. There, plaintiff alleges that

> [d]efendants acted in concert under color of state law in their official and individual capacities and under the direction and control of defendant employers City of Salem and Marion County, with malice and intent, to maliciously prosecute plaintiff for stalking with the ulterior purpose of immunizing defendant Dr. Jeffrey Phillips from suit through the "no contact" provisions of a stalking citation and temporary and permanent stalking protective orders that prohibit any contact by plaintiff with defendant Phillips under threat of felony prosecution and for which plaintiff has no remedy under state law.

9 - FINDINGS & RECOMMENDATION

Id. at ¶ 73.

Plaintiff then contends that "[a]ll the defendants" had an object to be accomplished, had an agreement on the object or course of action, performed one or more unlawful overt acts, and caused plaintiff damages that were a direct result of those unlawful overt acts. Id. at ¶ 74. Plaintiff alleges that the overt acts included, but were not limited to (1) fabricating probable cause for the issuance of the stalking citations, and the temporary and permanent stalking protective orders against plaintiff; (2) forging signatures of a circuit court judge; and (3) subjecting plaintiff to warrantless, unreasonable, and false arrests, searches, seizures, and detentions on three occasions. Id. at ¶ 75.

Although there are no allegations supporting Phillips's status as a government actor, "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989) (internal quotation omitted). "Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540 (9th Cir. 1989). "Private parties involved in such a conspiracy may be liable under section 1983." Id.

Phillips recognizes that a private individual jointly engaged with state officials may be acting under color of state law for purposes of a section 1983 claim. But, Phillips argues that more than "vague and conclusory" allegations are required. In support, Phillips cites Dennis v. Sparks, 449 U.S. 24 (1980), and Ivey v.

10 - FINDINGS & RECOMMENDATION

Board of Regents of the Univ. of Alaska, 673 F.2d 266 (1982).

Dennis is not on point. The case primarily stands for the proposition that private parties who are alleged to have conspired with a government official to deprive a person of his or her constitutional rights, may maintain the claim against the private parties even when the government official's actions are protected by judicial immunity. Dennis, 449 U.S. at 27-28. The case says nothing about vague and conclusory allegations. The Court did note that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge[;]" but, the Court continued, the allegations brought by the plaintiff in Dennis were that "an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge." Id. at 28. This was sufficient.

Ivey is on point, but it is distinguishable. There, the court first recognized its duty to liberally interpret a pro se civil rights complaint. Ivey, 673 F.2d at 268. Even so, the court explained, such an interpretation "may not supply essential elements of the claim that were not initially pled." Id. The court stated that "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. Because the complaint was "devoid of specific factual allegations showing the . . . defendants' participation in the alleged discriminatory employment practice[,]" the plaintiff had failed to state a claim under section 1983. Id.

Ivey is distinguishable because plaintiff here does allege specific facts in support of his section 1983 conspiracy claim. As

11 - FINDINGS & RECOMMENDATION

noted above, he contends that Phillips perjured himself in sworn statements given in support of the stalking citation. He goes on to allege specific actions of other actors that were allegedly part of the conspiracy. In contrast to Ivey, the Amended Complaint here contains more than a bare allegation of conspiracy. See Johnson v. State of Calif., 207 F.3d 650, 655 (9th Cir. 2000) (district court erred in dismissing section 1985(3) claim with prejudice because it contained more than bare allegation of conspiracy and additional facts in support of the alleged conspiracy may develop as the plaintiff proceeded with discovery).

It is clear that merely complaining to the police does not convert a private party into a state actor. Collins, 878 F.2d at 1155 (noting also that execution by a private party of a sworn complaint which forms the basis of an arrest is not enough to convert the private party's acts into state action). However, the allegations in this case go further than Phillips making a report to the police. Because of the specific factual allegations made in support of the conspiracy claim, and because Phillips is alleged to have conspired with government officials by intentionally providing false sworn statements, plaintiff has adequately stated a conspiracy claim for the purposes of a Rule 12(b)(6) motion, against Phillips.

I recommend that Phillip's motion to dismiss Counts I-VI be denied.

B.  Count VII - Supplemental State Law Claims

Phillips moves to dismiss the supplemental state law claims, grouped together as "Count VII" in the Amended Complaint, because without any federal claims remaining against Phillips, there is no

12 - FINDINGS & RECOMMENDATION

independent basis for jurisdiction over these claims. 28 U.S.C. § 1367. Because I recommend that the federal section 1983 claims not be dismissed at this time, I recommend that the motion to dismiss the state supplemental claims alleged in Count VII, also be denied.

## II. State Defendants' Motion to Dismiss

Defendants Lipscomb, Guimond, Ashcroft, Norblad, and Rohlfing move to dismiss all claims against them on the basis of judicial immunity. They alternatively move to dismiss the state supplemental claims raised in Count VII as barred by the Eleventh Amendment.

### A. Judicial Immunity

#### 1. Ashcroft, Guimond, Norblad, and Lipscomb

"The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential liability." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435 (1993). The doctrine discourages collateral attacks on judges and defers to the appellate process for the correction of judicial error. In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002). "[J]udges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities[.]" Dennis, 449 U.S. at 27 (internal quotation omitted).

"A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359 (1978). "This absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that

13 - FINDINGS & RECOMMENDATION

such action was driven by malicious or corrupt motives[.]" Castillo, 297 F.3d at 947. Moreover, even where a judge acts in excess of judicial authority, he or she is not deprived of immunity. Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996).

The judicial officer defendants argue that judicial immunity extends to all their alleged actions outlined in the Amended Complaint. Although plaintiff alleges that they acted maliciously and improperly, they contend that all of the claims are based on actions they took in deciding and handling matters that were in front of them as judges and thus, they are entitled to absolute immunity.

In response to the motion, plaintiff contends that immunity does not apply because he brings these claims against the judicial officer defendants in their individual capacities as well as their official capacities, and because the judicial officer defendants acted in the absence of jurisdiction. Neither of plaintiff's arguments has merit.

First, the capacity in which the individual is sued is different from the capacity in which a person's actions were taken. See Hafer v. Melo, 502 U.S. 21, 26-27 (1991) ("the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury").

Second, all of the alleged actions taken by these defendants as raised in the Amended Complaint, fall within their roles as judges. All of the alleged improper actions occurred while the judicial officer defendant was performing the normal judicial function of presiding over a case then assigned to that judge or

14 - FINDINGS & RECOMMENDATION

that judge's court. See Ashelman v. Pope, 793 F.2d 1072, 1075-76 (9th Cir. 1986) (outlining criteria for evaluating whether a given action is judicial in nature). While the law recognizes that "'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction[,]'" Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999) (quoting Mireles v. Waco, 502 U.S. 9, 11-12 (1991)), none of the allegations in plaintiff's Amended Complaint are capable of suggesting that any of the judicial officer defendants were acting without jurisdiction.

I recommend that the judicial officer defendants' motion to dismiss all claims against them, be granted.

2. Rohlfing

As noted above, Rohlfing is a court reporter who allegedly told plaintiff to re-appear at 1:30 p.m. on August 12, 2005, when he appeared at 11:30 a.m., and who also allegedly erased portions of the taped transcript of the August 12, 2005 hearing before Judge Ashcroft. Am. Compl. at ¶¶ 29, 35.

Under the doctrine of absolute "quasi-judicial immunity," the doctrine of judicial immunity, as described above, is extended to those who "perform functions closely associated with the judicial process[,]" or those who have a "sufficiently close nexus with the adjudicative process[.]" Castillo, 297 F.3d at 948 (internal quotation omitted).

The application of the doctrine does not depend on the job title of the defendant, but instead, requires an analysis of the function or act allegedly performed. Id. (noting that "to determine whether a nonjudicial officer is entitled to absolute quasi-judicial immunity, courts must look to the nature of the

15 - FINDINGS & RECOMMENDATION

function performed and not to the identity of the actor performing it."). As explained by the Supreme Court, "[w]hen judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges -- that is, because they, too, exercise a discretionary judgment as part of their function." Antoine, 508 U.S. at 436 (internal quotation and brackets omitted).

At issue in this case is Rohlfing's giving plaintiff scheduling information regarding the time of his hearing and allegedly tampering with the tape recording of the August 12, 2005 proceedings before Judge Ashcroft and omitting that portion from the final, written transcript.

As to the scheduling information, Rohlfing is entitled to quasi-judicial immunity for this function. See Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (court clerk entitled to quasi-judicial immunity for allegedly failing to properly manage the court's calendar; court noted that "[a] court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are afforded absolute immunity."); Moore, 96 F.3d at 1244 (Clerk of the court performed quasi-judicial functions as to which he was entitled to absolute immunity); Wagshal v. Foster, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (court's "case evaluator" performs judicial functions such as identifying factual and legal issues, scheduling discovery and motions with the parties, and coordinating settlement efforts).

I reject the assertion, however, that Rohlfing is entitled to absolute quasi-judicial immunity for her alleged actions in regard

16 - FINDINGS & RECOMMENDATION

to the transcript of the August 12, 2005 hearing before Judge Ashcroft.

In Antoine, the plaintiff brought a section 1983 claim against a court reporter who failed to deliver a complete transcript of a criminal trial on appeal. Although the Ninth Circuit held that the making of an official record of a court proceeding was part of the judicial function, the Supreme Court reversed. The Supreme Court first noted that "[c]ourt reporters were not among the class of person protected by judicial immunity in the 19th century." 508 U.S. at 433. The Court also rejected the notion that court reporters served as the functional equivalents of "common-law judges who made handwritten notes during trials." Id. at 434.

After explaining the relevant analysis, quoted above, that judicial immunity is extended to non-judicial officers when the actions at issue are "functionally comparable" to those of judges, because they "exercise a discretionary judgment" as part of the function, the Court then held that "[t]he function performed by court reporters is not in this category." Id. at 436. The Court remarked that court reporters are required by statute to "'record verbatim' court proceedings in their entirety." Id. (quoting 28 U.S.C. § 753(b)). Court reporters "are afforded no discretion in the carrying out of this duty; they are to record, as accurately as possible, what transpires in court." Id.

Although the state law applicable to Rohlfing does not contain the "record verbatim" language of the federal Court Reporter's Act, it does, like the federal law, provide for no discretion. Under Oregon law, a reporter must take accurate notes by shorthand or by means of a mechanical or electronic typing device, or make audio

17 - FINDINGS & RECOMMENDATION

records, of the oral testimony and other proceedings of the trial or hearing to the extent required by the court or by the requesting party. Or. Rev. Stat. § (O.R.S.) 8.340(4), (5). When such a record has been made, "if the court or either party . . . requests a transcript of the notes or audio records into longhand, the official reporter <u>shall cause full and accurate</u> typewritten transcripts to be made of the testimony or other proceedings[.]" O.R.S. 8.350 (emphasis added).

Based on the relevant state law and <u>Antoine</u>, Rohlfing is not entitled to absolute immunity for her alleged actions of erasing and/or failing to transcribe portions of the audio record of the August 12, 2005 proceedings before Judge Ashcroft. I recommend that Rohlfing's motion to dismiss, based on quasi-judicial immunity, be denied.

B. Eleventh Amendment

The judicial officer defendants and Rohlfing argue that plaintiff's Count VII supplemental state common-law claims should be dismissed because the Eleventh Amendment bars state law claims brought in federal court against a state which has not waived its immunity from suit in federal court.

The Eleventh Amendment bars claims in federal court against state officials based on state law violations. <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 106, 121-22 (1984). This includes state law claims in federal court based on supplemental (formerly pendent), jurisdiction. <u>Id.</u> (the principle that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment applies as well to state-law

18 - FINDINGS & RECOMMENDATION

claims brought into federal court under pendent jurisdiction).

The Eleventh Amendment immunity from suit extends to state agencies and officers. <u>Sofamor Danek Group, Inc. v. Brown</u>, 124 F.3d 1179, 1183 (9th Cir. 1997). The problem with defendants' argument, however, is that the immunity does <u>not</u> extend to claims brought against state officials in their individual or personal capacities. <u>Pena v. Gardner</u>, 976 F.2d 469, 473-74 (9th Cir. 1992) ("the eleventh amendment will not bar pendent state claims by [the plaintiff] against state officials acting in their individual capacities.").

Because the judicial officers enjoy absolute judicial immunity for their alleged actions, I discuss only the allegations regarding Rohlfing's official and individual capacity status. The Amended Complaint is not clear regarding the capacity in which she is sued. In the second full paragraph of the Amended Complaint, plaintiff alleges that the defendant state court judges "are sued in their official and individual capacities." Am. Compl. at p. 2. Plaintiff then alleges that Phillips is sued in his individual capacity. <u>Id.</u> No mention is made of Rohlfing.

Because I must give this pro se pleading a liberal construction, because generally, plaintiff appears to indicate that Rohlfing is to be considered as part of a group with the judicial officer defendants, and because the Amended Complaint is silent regarding the capacity in which Rohlfing is sued, I construe the Amended Complaint to allege that she is sued in both her official and individual capacities. As such, the motion, based on the Eleventh Amendment, should be granted to the extent that she is sued in her official capacity, but should be denied to the extent

19 - FINDINGS & RECOMMENDATION

she is sued in her individual or personal capacity.

## CONCLUSION

Phillips's motion to dismiss (#32) should be denied. The state defendants' motion to dismiss (#30) should be granted in part and denied in part.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 27, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due May 11, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this __12th__ day of __April__, 2006.


/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

20 - FINDINGS & RECOMMENDATION