1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                       FOR THE DISTRICT OF OREGON

11   JEFFERY MARTIN SIERZEGA,          )
                                       )
12                   Plaintiff,        )
                                       )
13        v.                           )
                                       )
14   PRO TEM JUDGE LYNN E. ASH-        )
     CROFT, JUDGE JOSEPH C.            )
15   GUIMOND, JUDGE ALBIN W. NOR-      )
     BLAD, PRESIDING JUDGE PAUL J.     )
16   LIPSCOMB, COURT REPORTER          )
     TRISHA ROHLFING, MARION COUNTY)
17   DEPUTY SHERIFF WELTY, MARION      )   No.  CV-05-1338-HU
     COUNTY DEPUTY SHERIFF DOUGALL,)
18   MARION COUNTY DEPUTY SHERIFF      )
     McDERMITT, MARION COUNTY          )
19   DEPUTY SHERIFF BERNARD, SALEM     )
     POLICE DEPT. OFFICER ERIC         )
20   MOFFITT, SALEM POLICE DEPT.       )
     CORPORAL J. HUMPHRIES, SALEM      )
21   POLICE DEPT. CORPORAL M. SEY-     )
     FRIED, SALEM POLICE DEPT. SER-)
22   GEANT D. CARPENTER, IN THEIR      )   FINDINGS & RECOMMENDATION
     OFFICIAL AND INDIVIDUAL CAPA-     )
23   CITIES, MARION COUNTY, CITY       )
     OF SALEM, DR. JEFFREY             )
24   PHILLIPS, DMD, JOHN/JANE DOE      )
     DEFENDANTS 1-4,                   )
25                                     )
                     Defendants.       )
26   _____)

27   / / /

28   / / /


     1 - FINDINGS & RECOMMENDATION

Jeffery Martin Sierzega
6712 Lardon Road, N.E.
Salem, Oregon 97305

    Plaintiff Pro Se

Hardy Myers
ATTORNEY GENERAL
David L. Kramer
ASSISTANT ATTORNEY GENERAL
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

    Attorneys for Defendants Lipscomb, Guimond, Ashcroft,
        Norblad, and Rohlfing

Kim E. Hoyt
Spencer C. Rockwell
GARRETT, HEMANN, ROBERTSON,
JENNINGS, COMSTOCK & TRETHEWY, P.C.
1011 Commercial Street, N.E.
P.O. Box 749
Salem, Oregon 97308

    Attorneys for Defendant Jeffrey C. Phillips, DMD

Kirstin E. Lurtz
ASSISTANT LEGAL COUNSEL
Office of Legal Counsel - Marion County
555 Court Street NE.
Salem, Oregon 97301

    Attorney for Marion County Defendants

Aaron D. Felton
CITY OF SALEM LEGAL DEPARTMENT
555 Liberty SE, Rm. 205
Salem, Oregon 97301

    Attorney for City of Salem Defendants

HUBEL, Magistrate Judge:

    Plaintiff Jeffery Sierzega brings this civil rights action against several Marion County Circuit Court judges, a court reporter, several Marion County deputy sheriffs, several City of Salem police officers, Marion County, and the City of Salem.  He also brings claims against a dentist, Dr. Jeffrey Phillips, DMD.

    In an April 12, 2006 Findings & Recommendation, I recommended

2 - FINDINGS & RECOMMENDATION

that Rule 12(b)(6) motions to dismiss by all of the Marion County Circuit Court judges, be granted, that Phillips's Rule 12(b)(6) motion to dismiss be denied, and that Rohlfing's Rule 12(b)(6) motion to dismiss be denied in part and granted in part.  On July 21, 2006, Judge Haggerty adopted the Findings & Recommendation.

Presently, the remaining defendants all move to dismiss pursuant to Federal Rule of Civil Procedure 37(b).  I recommend that the motions be granted.

BACKGROUND

Following the April 12, 2006 Findings & Recommendation, I conducted a scheduling conference with the parties that included setting a July 21, 2006 date for completion of fact discovery, an August 4, 2006 date for the filing of dispositive motions, and March 5, 2007 date for trial.  (Docket #53).  On June 20, 2006, I granted in part and denied in part plaintiff's motion for an extension of deadlines, and extended the fact discovery completion date to August 18, 2006; all other deadlines remained as previously set.  (Docket #61).

Defendants intended to take plaintiff's deposition on June 27, 2006.  According to an affidavit filed by Assistant Attorney General Liani Reeves, who represented the state defendants at the time, her staff attempted to contact plaintiff by telephone to schedule his deposition and left messages for him on May 15, 2006, and May 18, 2006.  Reeves June 29, 2006 Affid. at ¶ 4.  Plaintiff returned the calls on May 23, 2006, but Reeves was in trial in Pendleton.  Id.  Plaintiff was told Reeves would call him upon her return to the office.  Id.  Upon return to the office, Reeves's staff again tried to contact plaintiff and left him messages on

3 - FINDINGS & RECOMMENDATION

1    June 1, 2006, June 2, 2006, and June 6, 2006.  Id. at ¶ 5.  Reeves

2    and her staff received no response to these messages.  Id. at ¶ 6.

3         On June 12, 2006, Reeves issued a deposition subpoena to

4    plaintiff requiring him to appear at the Department of Justice on

5    June 27, 2006, at 9:00 a.m.  Id. at ¶ 7.

6         On June 27, 2006, shortly before the deposition was to begin,

7    plaintiff called Reeves and informed her that he was not going to

8    testify, that he wanted to reschedule the deposition, and that he

9    was going to file a motion for protective order.  Id. at ¶ 9.

10   Reeves urged him to appear and put any objections he had on the

11   record.  Id.  She also called my Courtroom Deputy to alert the

12   Court to a possible problem which might require Court intervention.

13   Id. at ¶ 10.

14        Counsel for all defendants appeared at the Department of

15   Justice to take plaintiff's deposition at 9:00 a.m.  Id. at ¶ 11.

16   Plaintiff arrived at the Department of Justice and informed the

17   assembled group of counsel, as well as defendant Sheriff's Deputy

18   Welty and court reporter Vangie Yauch, that he would not testify

19   and that he was going to file a motion for protective order.  Id.

20   at ¶ 12.  Reeves received a copy of the motion for protective order

21   later that morning.  Id. at ¶ 13.

22        Plaintiff filed his motion for protective order on June 27,

23   2006.  (Docket #63).  He contended that Reeves had not made a good

24   faith effort to confer with him about a deposition date.  Pltf's

25   June 27, 2006 Mtn for Prot. Ord at ¶ 1.  He also made several

26   arguments about alleged irregularities with the deposition

27   subpoena.  Id. at ¶¶ 2-4.  He sought a protective order suspending

28   his deposition pending a ruling on "this discovery dispute."  Id.

4 - FINDINGS & RECOMMENDATION

1  at ¶ 5.

2          On June 29, 2006, the state defendants filed an opposition to

3  the motion for protective order which included, <u>inter</u> <u>alia</u>, a

4  recitation by Reeves in an affidavit of the attempts she made to

5  contact plaintiff to schedule the deposition.  (Docket #66, 67).

6          On June 30, 2006, plaintiff filed an Amended Motion for

7  Protective Order.  (Docket #68).  Plaintiff continued to allege

8  that Reeves had failed to confer in good faith with plaintiff

9  before issuing the deposition subpoena.  Pltf's June 30, 2006 Am.

10 Mtn for Prot. Ord at ¶ 1.  He also continued to make arguments

11 about alleged irregularities with the deposition subpoena.  <u>Id.</u> at

12 ¶¶ 2, 4.  He also added an allegation that Reeves had failed to

13 notify him that six other people would be in attendance at the

14 deposition.  <u>Id.</u> at ¶ 3.

15         Finally, he made the following allegation:

16              Opposing counsel has access to the contents of
                Plaintiff's wire, oral, and written communications and
17              all of Plaintiff's privileged information, which is being
                intercepted through a 24/7 overhead, sense-enhancing,
18              optical and electronic surveillance conducted by or for
                Defendants represented by the Oregon Dept. of Justice and
19              Defendant law-enforcement agencies of state, County, and
                municipal government, and being disclosed to the adverse
20              parties.

21 <u>Id.</u> at ¶ 5.  Plaintiff requested that I enter a protective order

22 specifying that any depositions be attended only by plaintiff,

23 opposing counsel, and a court reporter, and that opposing counsel

24 confer in good faith with plaintiff regarding a mutually agreeable

25 time for the deposition.  <u>Id.</u> at p. 2.  He also requested that the

26 notice of deposition disclose the manner in which the testimony

27 would be recorded.  <u>Id.</u> at p. 3.  He also requested that

28         the Court order all surveillance by any agency or entity

5 - FINDINGS & RECOMMENDATION

1    of State, County, or municipal government to cease
2    immediately, as well as the disclosure of Plaintiff's
     privileged information and intercepted wire, oral, and
     written communications to the adverse parties, and that
3    any and all undue and improper covert influence on
     Plaintiff's family and health-care providers be
4    terminated immediately.

5  Id.  Plaintiff requested that the Court set the matter for hearing.

6  Id.

7       I held a telephone hearing on plaintiff's motions for

8  protective order on July 21, 2006. I denied the motions, but with

9  the parties all participating in the telephone hearing, I

10 facilitated a discussion regarding a mutually convenient date on

11 which defendants would depose plaintiff.  With the parties'

12 consent, and in light of the plaintiff's and the defendants'

13 arguments on plaintiff's motion for protective order, I ordered

14 plaintiff's deposition be taken on September 1, 2006, 9:00 a.m.

15 See July 21, 2006 Min. Ord (Docket #79).

16      In reviewing the materials submitted by the parties both in

17 support of, and in opposition to, the motions for protective order,

18 it was clear to me that there was a strong likelihood that

19 defendants might have problems getting answers to their questions

20 without disruptions.  I believed that the disruptions would have a

21 negative impact on the orderly process of the deposition.  To

22 ensure easy access to the Court for resolution of any such issues,

23 and to avoid a possible recess and adjournment of the deposition,

24 I ordered that the deposition take place in my courtroom at the

25 United States Courthouse in Portland.  Id.

26      I also confirmed on the record that only defense counsel and

27 not their clients, would attend the deposition, along with a court

28 reporter.  I clarified with counsel and plaintiff that the court

6 - FINDINGS & RECOMMENDATION

reporter would report the deposition testimony in the conventional fashion, using a tape for backup. I required counsel to notify plaintiff ahead of time regarding the name of the selected court reporter and gave plaintiff the opportunity to make an objection to the selected reporter if he had any.

Following this July 21, 2006 hearing, several discovery disputes arose. On July 25, 2006, plaintiff moved to compel answers to interrogatories propounded to Phillips. (Docket #82). I initially ordered that a hearing on that motion take place on September 1, 2006, when the parties were already scheduled to be in the United States Courthouse for plaintiff's deposition. Other filings with the Court demonstrated that plaintiff was serving subpoenas duces tecum on various third parties such as the "Oregon Military Department" (Docket #91), and Oregon Attorney General Hardy Myers. (Docket #95).

Several third parties moved to quash the subpoenas. (Docket #96, 101). I set a hearing on these discovery and subpoena-related motions, on August 17, 2006. I ordered that plaintiff and any attorney involved in the disputes appear in person for the proceeding. (Docket #99, 100, 104). Plaintiff failed to appear in person. The Court contacted plaintiff by telephone for the hearing and plaintiff explained that car trouble prevented him from appearing in Court as ordered. I granted the motions in part and denied them in part. (Docket #107). I also ordered that the deposition of Phillips take place in my jury room on September 11, 2006, or September 12, 2006, at the United States Courthouse, in Portland. Id.

On August 18, 2006, plaintiff filed a notice of appeal

7 - FINDINGS & RECOMMENDATION

1  directed to Judge Haggerty's July 21, 2006 Order adopting the April
2  12, 2006 Findings & Recommendation.   (Docket #106).   During the
3  period between August 18, 2006, and August 22, 2006, plaintiff
4  contacted my Courtroom Deputy several times regarding his belief
5  that the Local Rules for the District of Oregon allowed him to file
6  materials by fax.  At least once he accused my Courtroom Deputy of
7  "being a part of the conspiracy against him."

8      On August 22, 2006, plaintiff advised my Courtroom Deputy that
9  he would not abide by my order that Phillips's deposition take
10 place in the United States Courthouse in Portland.  On August 30,
11 2006, he told my Courtroom Deputy that he would not appear on
12 September 1, 2006, for his deposition because he had not been
13 served with a formal notice of the deposition and had not been
14 given witness fees for the appearance.  At my instruction, my
15 Courtroom Deputy returned plaintiff's call and advised him that
16 witness fees do not apply when the deponent is a party to the
17 proceeding, and that plaintiff was required to appear for the
18 deposition because the Court ordered him to do so on July 21, 2006.
19 Plaintiff confirmed again his intent not to appear, telling my
20 Courtroom Deputy that he disagreed with my position that witness
21 fees do not apply to a party.  At my instruction, my Courtroom
22 Deputy advised plaintiff that failure to appear might result in
23 some type of court-ordered sanction.

24     Because of my concerns regarding plaintiff's attendance at the
25 September 1, 2006 deposition, I convened a telephone conference
26 with plaintiff and counsel on August 31, 2006, at which I confirmed
27 my July 21, 2006 Order that defendants' deposition of plaintiff
28 take place on September 1, 2006, at 9:00 a.m., at the United States

8 - FINDINGS & RECOMMENDATION

1  Courthouse in Portland, Oregon. (Docket #111). I told plaintiff

2  that if the deposition did not go forward as ordered, the

3  defendants had the right to ask the Court to impose sanctions on

4  plaintiff for his failure to appear. I told plaintiff that I could

5  not know what type of sanction defendants would request, but that

6  a sanction request of some sort was a possibility. I also

7  reiterated my prior order that plaintiff's deposition of Phillips

8  was to take place on either September 11, 2006, or September 12,

9  2006, at 9:30 a.m., at the United States Courthouse. Id.

10      Following the conclusion of that conference, Reeves spoke to

11 her supervisor, Assistant Attorney General David Kramer, and asked

12 to be relieved of her role as primary counsel for the state

13 defendants. Reeves, who had previously expressed concern to

14 plaintiff regarding his hostile behavior toward her, apparently

15 concluded that she was tired of plaintiff's continued verbal abuse

16 toward her. See Kramer Sept. 6, 2006 Affid. at ¶ 3 (describing

17 conversation between Kramer and Reeves); Reeves Sept. 6, 2006

18 Affid. at ¶¶ 6,7, 8, 9, (describing rude and abusive behavior by

19 plaintiff toward Reeves).[1]   Kramer then called plaintiff and

20 informed him that he, not Reeves, would appear at the September 1,

21 2006 deposition. Kramer Sept. 6, 2006 Affid. at ¶ 4. He left a

22 message on plaintiff's answering machine and requested that

23 plaintiff call him if there were a problem. Id. Kramer did not

24 receive a call from plaintiff. Id.

25

26      [1]   During the hearing on August 31, 2006, the Court found it
27 necessary to admonish plaintiff for his hostile and abusive tone
   during the hearing. He was warned that he would suffer serious
28 sanctions if he did not treat people, including counsel, civilly.

9 - FINDINGS & RECOMMENDATION

1    Kramer also asked Reeves to call my Courtroom Deputy and
2    inform her of the change of counsel for the deposition. Id. at ¶
3    5. My Courtroom Deputy advised Reeves that the deposition would
4    take place as scheduled, with Kramer representing the state
5    defendants.   My Courtroom Deputy then left a voicemail for
6    plaintiff reiterating that the deposition would take place the next
7    day, with Kramer substituting for Reeves.
8        On September 1, 2006, plaintiff left a voicemail for my
9    Courtroom Deputy at approximately 7:19 a.m., informing her that he
10   would not attend the deposition because of Kramer's substitution
11   for Reeves.   My Courtroom Deputy retrieved the voicemail at
12   approximately 8:20 a.m.  Because the deposition was set for 9:00
13   a.m., and many of the defense attorneys were traveling from Salem
14   to Portland, it was impossible to reach defense counsel to inform
15   them of plaintiff's call.   All defense counsel appeared as
16   scheduled to take plaintiff's deposition.   Plaintiff failed to
17   appear. (Docket #112). Defendants' counsel asked for an immediate
18   hearing to note this for the record.  The Court's attempts to reach
19   plaintiff by telephone for the hearing were unsuccessful. Id.
20       Defendants filed motions to dismiss pursuant to Rule 37.  I
21   set oral argument on the motions for October 17, 2006.  I initially
22   ordered a stay of discovery with respect to the depositions of
23   Phillips and a third party, Bill Carroll, pending resolutions of
24   the motions to dismiss. (Docket #125).  I extended that to a stay
25   of all discovery pending resolution of the motions to dismiss.
26   (Docket #140).  Plaintiff then filed notices of appeal from the
27   first order staying discovery as to Phillips and Carroll, (docket
28   #133), and the second order staying all discovery (docket #149).

10 - FINDINGS & RECOMMENDATION

1                                    STANDARDS

2          Rule 37(b)(2)(C) allows a court to dismiss an action when a

3    party fails to obey an order to provide discovery.   Courts must

4    weigh five factors in deciding whether to dismiss a case for

5    failure to comply with a court order.   In re Phenylpropanolamine

6    (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1226 (9th Cir. 2006).

7    The five factors are:  "(1) the public's interest in expeditious

8    resolution of litigation; (2) the court's need to manage its

9    docket; (3) the risk of prejudice to the defendants; (4) the public

10   policy favoring disposition of cases on their merits; and (5) the

11   availability of less drastic sanctions."   Id. (internal quotation

12   omitted).  "Where a court order is violated, the first two factors

13   support sanctions and the fourth factor cuts against a default.

14   Therefore, it is the third and fifth factors that are decisive."

15   Payne v. Exxon Corp., 121 F.3d 503, 507 (9th Cir. 1997) (internal

16   quotation omitted).

17         When the court contemplates dismissal as a Rule 37 sanction,

18   the "range of discretion is narrowed and the losing party's

19   noncompliance must be due to willfulness, fault, or bad faith."

20   Id.; see also PPA Prods. Liab. Litig., 460 F.3d at 1233 ("Rule 37

21   sanctions, including dismissal, may be imposed where the violation

22   is due to willfulness, bad faith, or fault of the party") (internal

23   quotation omitted) (emphasis in PPA Prods. Liab. Litig.).

24   "Disobedient conduct not shown to be outside the litigant's control

25   meets this standard."   Id. (internal quotation omitted).

26                                    DISCUSSION

27   I.  Jurisdiction

28         Plaintiff contends that the notices of appeal he filed deprive

11 - FINDINGS & RECOMMENDATION

1  this Court of jurisdiction to proceed with the case, and
2  particularly, to resolve the Rule 37 motions to dismiss. I
3  disagree.

4       The courts of appeals have jurisdiction of appeals from the
5  final decisions of the district courts. 28 U.S.C. § 1291.
6  However, if an order of dismissal does not constitute the final
7  decision of the district court, the court of appeals has no
8  jurisdiction over the appeal. Lopez v. City of Needles, 95 F.3d
9  20, 22 (9th Cir. 1996). Thus, for example, the dismissal of a
10 complaint with leave to amend is not an appealable decision. WMX
11 Techs., Inc. v. Miller, 104 F.3d 1133, 1135 (9th Cir. 1997).
12 Instead, a final judgment must be obtained before the case becomes
13 appealable. Id. at 1137.

14      Even when certain causes of action are dismissed without leave
15 to amend, if leave to amend is granted for other causes of action
16 and if there is no Federal Rule of Civil Procedure 54(b)
17 certification, the district court order is not appealable. Id. at
18 1135 n.1. Finality is precluded where no final judgment is entered
19 and it is clear from the course of the proceedings that further
20 adjudication is contemplated. Disabled Rights Action Comm. v. Las
21 Vegas Events, Inc., 375 F.3d 861, 872 (9th Cir. 2004).

22      Here, Judge Haggerty's July 21, 2006 Order adopting the
23 Findings & Recommendation, was not a final decision within the
24 meaning of 28 U.S.C. § 1291. Fundamentally, the Order did not
25 dispose of the entire action because first, only some of the
26 defendants moved to dismiss, and second, not all of those who moved
27 to dismiss were successful in obtaining dismissal. Clearly,
28 further adjudication of the claims as to the remaining defendants

12 - FINDINGS & RECOMMENDATION

1    was contemplated.

2         No final judgment has been entered.  <u>See</u> Fed. R. Civ. P. 54(b)

3    (in absence of determination by district court that there is no

4    just reason for delay and in absence of direction by district court

5    that final judgment be entered as to fewer than all of the claims

6    or parties, any order which adjudicates fewer than all the claims

7    or the rights and liabilities of fewer than all the parties shall

8    not terminate the action as to any of the claims or parties, and

9    the order is subject to revision at any time before the entry of

10   judgment adjudicating all the claims and the rights and liabilities

11   of all the parties).  Accordingly, the Ninth Circuit does not have

12   jurisdiction over the appeal of Judge Haggerty's Order under

13   section 1291.  Additionally, the two orders staying discovery until

14   resolution of the pending motions to dismiss, are similarly not

15   final decisions within the meaning of 28 U.S.C. § 1291 and thus,

16   the Ninth Circuit does not have jurisdiction over those appeals

17   pursuant to that statute.  Jurisdiction remains with this Court.

18        While there are provisions for an interlocutory appeal under

19   28 U.S.C. § 1292, the prerequisites for such an appeal have not

20   been met here.  Section 1292 establishes three classes of

21   interlocutory orders that may be appealed as a matter of right:

22   (1)  interlocutory orders of the district courts granting,

23   continuing, modifying, refusing, or dissolving injunctions, or

24   refusing to dissolve or modify injunctions, except where a direct

25   review may be had in the Supreme Court; (2) interlocutory orders

26   appointing receivers, or refusing orders to wind up receiverships

27   or to take steps to accomplish the purposes thereof; and (3)

28   interlocutory decrees determining the rights and liabilities of the

13 - FINDINGS & RECOMMENDATION

1    parties to admiralty cases in which appeals from final decrees are

2    allowed.   28 U.S.C. § 1292(a).   None of the orders from which

3    plaintiff attempts to appeal fall within any of these categories.

4        Under 28 U.S.C. § 1292(b), the district court, in issuing an

5    order in a civil action which is not otherwise appealable, may

6    allow an interlocutory appeal if the court determines, and states

7    in writing, that the order "involves a controlling question of law

8    as to which there is substantial ground for difference of opinion

9    and that an immediate appeal from the order may materially advance

10   the ultimate termination of the litigation[.]"   28 U.S.C. §

11   1292(b).

12       If the order contains such a statement, a party may file a

13   notice of appeal within ten days of the order.   Id.   Here, none of

14   the orders from which plaintiff attempts to appeal contain the

15   required section 1292(b) certification.   Additionally, plaintiff

16   failed to file a notice of appeal as to Judge Haggerty's July 21,

17   2006 Order, within ten days of the Order.   Rather, plaintiff filed

18   that notice of appeal on August 18, 2006, more than ten days after

19   the Order was filed.   Finally, plaintiff did not follow the

20   procedure for taking an appeal by permission as required under

21   Federal Rule of Appellate Procedure 5.   See Armstrong v. Wilson,

22   124 F.3d 1019, 1021 (9th Cir. 1997) (interlocutory appeals under

23   section 1292(b) are by permission).

24       The orders plaintiff attempts to appeal from are not final

25   orders under 28 U.S.C. § 1291.   They do not meet the criteria

26   required to be appealed as interlocutory orders under 28 U.S.C. §

27   1292.   Thus, jurisdiction was not transferred to the Ninth Circuit

28   with the filing of these appeals.   See Resnik v. La Paz Guest

14 - FINDINGS & RECOMMENDATION

1  Ranch, 289 F.2d 814, 818 (9th Cir. 1961) ("[t]he improvident taking
2  of an appeal cannot effectively destroy the authority of the court
3  below to proceed upon motions properly before it.").

4  II.  Dismissal

5       As noted above, the court must analyze five factors before
6  concluding that dismissal is the appropriate sanction under Rule
7  37.  And, as noted above, it is generally thought the first two
8  factors support a sanction of dismissal on these facts, and the
9  fourth factor cuts against a dismissal, making the third and fifth
10 factors decisive.

11      A.  First, Second, and Fifth Factors

12      The first factor is the expeditious resolution of litigation.
13 "[T]he public has an overriding interest in securing 'the just,
14 speedy, and inexpensive determination of every action.'"  In re PPA
15 Prods. Liab. Litig., 460 F.3d at 1227 (quoting Fed. R. Civ. P. 1).
16 When delay becomes unreasonable, dismissal may be appropriate.  See
17 id. (noting that delay in reaching the merits is "costly in money,
18 memory, manageability, and confidence in the process[,]" and
19 deferring to the district court's judgment about when delay becomes
20 unreasonable).

21      Plaintiff has twice failed to appear for his deposition.
22 While the first time in June 2006 was not a violation of a court
23 order, his failure to appear then, combined with his failure to
24 appear on September 1, 2006, suggests a pattern of non-compliance
25 and obstreperous conduct that has caused unnecessary delay in the
26 case, which promises to continue.  I have extended deadlines in the
27 case at least once, partly based on plaintiff having failed to
28 appear for the June 2006 deposition and partly based on plaintiff's

15 - FINDINGS & RECOMMENDATION

1   discovery requests of third parties which prompted several motions

2   to quash requiring this Court's intervention.

3       At this point, the case has been pending for more than one

4   year and at the time the Rule 37 motions to dismiss were filed by

5   defendants in early September 2006, discovery had still not been

6   completed.   Based on my experience as a jurist, I anticipate

7   continued problems with the efficient resolution of this case and

8   thus, conclude that dismissal provides the most expeditious

9   resolution of the litigation.  This conclusion is based at least in

10  part on the fantastic claims plaintiff has made during this case to

11  explain his conduct, all without any supporting evidence.

12      The second factor is the court's need to manage its docket.

13  "District courts have an inherent power to control their dockets.

14  In the exercise of that power they may impose sanctions including,

15  where appropriate, default or dismissal."  Id. at 1127 (internal

16  quotation omitted).   When a party causes several unnecessary

17  pretrial proceedings by serving discovery requests on third parties

18  who do not have information relevant to the case, by failing to

19  show up for a noticed deposition, and then by failing to show up

20  for the same deposition, when ordered to do so by the Court, the

21  Court's management of the case becomes burdensome.  Moreover, in

22  this case, I view dismissal not only as a sanction for plaintiff's

23  conduct to date, but also as a deterrent to similar future conduct.

24  Allen v. Exxon Corp., 102 F.3d 429, 433 (9th Cir. 1996) (court may

25  consider deterrence as a factor in determining whether dismissal as

26  a sanction is warranted); see also National Hockey League v.

27  Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976) (dismissal

28  may be appropriate not only to penalize conduct "but to deter those

16 - FINDINGS & RECOMMENDATION

1  who might be tempted to such conduct in the absence of such a
2  deterrent.").  This factors favors dismissal.

3      The fourth factor is the public policy favoring disposition of
4  cases on the merits.  Ordinarily, this factors "counsels against
5  dismissal."   In re PPA Prods. Liab. Litig., 460 F.3d at 1228.
6  However, when a party's failure to comply with court orders impedes
7  progress in moving the case toward resolution on the merits, this
8  factor may offer "little support" to that party, especially when it
9  is that party's responsibility to move the case forward.  Id.  That
10 is the case here.

11     Additionally, and perhaps more fundamentally in this case, it
12 is worth noting that while a resolution on the merits is favored,
13 plaintiff's likelihood of prevailing on the merits in this case is
14 slim.  I do not intend to prejudge the merits or to usurp the role
15 of the proper factfinder.  But, in this case, an evaluation of this
16 fourth factor would be incomplete without mentioning this issue.

17     Given the posture of the case, the only substantive review of
18 the allegations has been in connection with the Rule 12(b)(6)
19 motions to dismiss filed by the state defendants and Phillips.  The
20 judicial officers were dismissed on the basis of judicial immunity.
21 All other defendants remain in the case.  It is plain that a Rule
22 12(b)(6) motion asks the court to determine only whether the
23 allegations, if true, can state a claim.  E.g., Moyo v. Gomez, 40
24 F.3d 982, 984 (9th Cir. 1994) (on a Rule 12(b)(6) motion, the
25 allegations of material fact must be taken as true).  It is
26 inappropriate for the Court to assess the factual credibility of
27 the allegations in the context of such a motion.  In resolving
28 those motions to dismiss, I concluded that at least as to Phillips

17 - FINDINGS & RECOMMENDATION

1   and Rohlfing, the allegations, if true, could state a claim.

2       However, without the constraint imposed by a Rule 12(b)(6)
3   motion of having to accept the truth of the factual assertions, it
4   is apparent to this Court that the merits in this case are based on
5   plaintiff's theory of an alleged conspiracy against him, beginning,
6   as plaintiff described during the August 17, 2006 hearing, with the
7   placement by Phillips, approximately ten years ago, of certain
8   amalgams in plaintiff's son's baby teeth which allegedly allowed
9   plaintiff's son to be remotely tracked, located, and monitored, and
10  generally surveilled by some persons, perhaps the Oregon Department
11  of Justice.  Plaintiff's quest to determine who gave Phillips these
12  amalgams is what purportedly prompted Phillips to obtain an anti-
13  stalking order against plaintiff from the Marion County Circuit
14  Court.

15      The process of obtaining that order is the basis of the civil
16  rights claims which are the subject of the instant action.
17  Generally, plaintiff contends that Phillips conspired with the
18  defendant judges, deputy sheriffs, and city police officers, to
19  deprive him of his civil rights in connection with the anti-
20  stalking order litigation.

21      As Kramer noted at the October 17, 2006 hearing on the Rule 37
22  motions to dismiss, while the attorneys and the Court are lay
23  persons in the field of medicine, particularly psychiatry, the
24  allegations in the Complaint, coupled with the disclosure during
25  other hearings and filings that the genesis of the anti-stalking
26  order is the belief that the amalgams contained certain
27  surveillance equipment, along with plaintiff's continued references
28  during the course of the litigation to monitoring of his telephone

18 - FINDINGS & RECOMMENDATION

conversations by the Marion County Sheriff's Department and/or the Oregon Department of Justice, and references to the overhead, undercover surveillance of proceedings at this courthouse, lead to a not unreasonable conclusion that plaintiff may suffer from some sort of mental illness. While plaintiff may truly believe in the occurrence of these events, nothing has come to light during the pendency of this case that suggests a jury would believe that these allegations are anything more than a fantasy, leading the jury to reject all of plaintiff's claims. Thus, I conclude that this factor is neutral, at best, or slightly favors dismissal.

B.  Third & Fifth Factors

The third factor is the risk of prejudice to the defendants. "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." PPA Prods. Liab. Litig., 460 F.3d at 1227 (internal quotation omitted).

Prejudice consists of loss of evidence and memory, and also includes costs or burdens of litigation. Id. at 1228. Prejudice may not include the mere pendency of the lawsuit itself. Id.

The law presumes prejudice from unreasonable delay. Id. at 1227. Plaintiff may rebut the presumption if he shows that no actual prejudice has occurred. Id. at 1228. If the plaintiff articulates a non-frivolous excuse for delay, the burden of production shifts to defendant to show at least some actual prejudice. Id.

Plaintiff's refusal to appear at a deposition is prejudicial to defendants. Deposing a plaintiff is a standard discovery tool in civil litigation. It is often required before a defendant may

19 - FINDINGS & RECOMMENDATION

1  make a dispositive motion and it may provide a basis for
2  impeachment at trial.    In most cases, obtaining a plaintiff's
3  deposition testimony is an essential aspect of defending against
4  the claims.   This factor favors dismissal.

5      The fifth factor is the availability of less drastic
6  sanctions. Obviously, dismissal is the harshest sanction available
7  to the Court.   It is appropriate to order dismissal only after
8  concluding that less drastic sanctions would be ineffective in
9  curing the conduct.

10     First, I note that while I did not expressly inform plaintiff
11 that dismissal was likely or certain to occur if he did not appear
12 for his deposition on September 1, 2006, both my Courtroom Deputy
13 on August 30, 2006, and I, on August 31, 2006, explained to
14 plaintiff that some form of sanction was possible if he chose not
15 to appear.  He nonetheless failed to appear.

16     Second, plaintiff has been granted in forma pauperis status in
17 this case.   (Docket #4).  He expressly stated at the October 17,
18 2006 hearing that he has limited, or no, funds.  Thus, any monetary
19 sanction would be ineffective in altering his conduct.

20     Third, although plaintiff's failure to appear at the June 27,
21 2006 deposition was not a violation of a Court Order, it is, as
22 noted above, suggestive of a pattern of disruptive behavior,
23 causing delay.   He also demonstrated a pattern of abusive,
24 disrespectful conduct toward Reeves, and the Court.

25     Fourth, and most importantly, plaintiff's apparent emotional
26 or mental instability counsels in favor of dismissal.  Plaintiff
27 again demonstrated that his mental health may not be entirely sound
28 when, at the October 17, 2006 hearing, he insisted that "they" were

20 - FINDINGS & RECOMMENDATION

conducting unmanned overhead surveillance at the courthouse and stated that he had no proof of this because the information was classified. As noted throughout this Findings & Recommendation, similar allegations have permeated this litigation. It is clear that plaintiff's mental health is an underlying issue in the case and affects his conduct. As a result, it is clear that he will not change his behavior and thus, nothing short of dismissal will be effective in ending the disruptive conduct. Less harsh alternative sanctions are not an effective option.

C. Willfulness, Bad Faith, or Fault

Plaintiff's failure to appear for the September 1, 2006 deposition was a willful decision on his part. Nothing in the record suggests that plaintiff had a valid basis for his non-appearance. He participated in the selection of the date and time and at his request, the participants were limited to counsel only, and a court reporter to whom plaintiff had no objection. He was reminded of his obligation to appear at the August 31, 2006 hearing. He received a phone call from my Courtroom Deputy late in the day on August 31, 2006, informing him that Kramer's substitution for Reeves as counsel for Rohlfing had no effect on his required appearance the next morning.

His intent to disobey the Court Order requiring him to appear on September 1, 2006, is evidenced by his phone call to my Courtroom Deputy on the morning of September 1, 2006, informing her of his decision not to attend. He clearly intended to disobey the order.

His intent is further demonstrated in a motion for protective order filed on October 6, 2006. (Docket #159). There, in response

21 - FINDINGS & RECOMMENDATION

1   to my order that all counsel and plaintiff personally appear for

2   the oral argument on the Rule 37 motions to dismiss on October 17,

3   206, (Docket #131), plaintiff sought a protective order prohibiting

4   all "remote, covert, overhead monitoring," and "interception of

5   Plaintiff's wire, oral, and written communications," by any agency

6   or entity of federal, state, county, or local law-enforcement.

7   Pltf's Oct. 6, 2006 Mtn for Prot. Ord.   The clear message of

8   plaintiff's motion is that he intended to disobey the order

9   requiring his personal appearance at the October 17, 2006 hearing

10  unless I granted the protective order.

11      Because there was no basis for granting the motion, I denied

12  the motion on October 13, 2006, and expressly advised plaintiff

13  that failure to comply with the order requiring his personal

14  appearance at the October 17, 2006 hearing could be considered as

15  another potential ground for dismissing his case with prejudice.

16  (Docket #162).

17      Plaintiff's conduct shows a pattern of resistance to complying

18  with court orders unless certain criteria demanded by plaintiff,

19  are met.   This exposes a conscious decision-making process; that

20  is, if he does not get the orders he wants from the Court, he

21  willfully chooses not to comply with the Court's orders.

22  Plaintiff's conduct in disregarding the order to appear for his

23  deposition on September 1, 2006, was willful.

24      In sum, the five relevant factors, combined with plaintiff's

25  willfulness, support dismissal for his violation of the order

26  requiring him to appear for deposition on September 1, 2006.

27  III.  Fees

28      All defendants request that plaintiff be ordered to pay their

22 - FINDINGS & RECOMMENDATION

1    fees for preparing for the September 1, 2006 deposition, and
2    counsels' appearances in court on that date.  Additionally,
3    Rohlfing seeks fees incurred in filing the Rule 37(b) motion, and
4    the Marion County defendants seek fees for attending the deposition
5    on June 27, 2006.

6         In determining an appropriate sanction for violation of a
7    court order, the Court considers a range of sanctions including an
8    award of fees which a party can demonstrate were incurred as a
9    result of the sanctionable conduct.  As discussed above in the
10   section evaluating any available lesser sanction, I rejected a
11   monetary penalty as an effective sanction in this case because of
12   plaintiff's poverty.  Having rejected the lesser sanction and
13   having imposed the most drastic sanction available to the Court in
14   dismissing the action with prejudice, I decline to award the
15   requested fees to defendants because this would amount to double
16   sanctions in the form of fees and dismissal.  I recommend that the
17   fee requests be denied.

18                            CONCLUSION

19        Defendants' motions to dismiss (#114, 120, 121, 127), should
20   be granted and this case should be dismissed with prejudice.

21                         SCHEDULING ORDER

22        The above Findings and Recommendation will be referred to a
23   United States District Judge for review.  Objections, if any, are
24   due November 22, 2006.  If no objections are filed, review of the
25   Findings and Recommendation will go under advisement on that date.
26   / / /
27   / / /
28   / / /

23 - FINDINGS & RECOMMENDATION

1       If objections are filed, a response to the objections is due

2   December 6, 2006, and the review of the Findings and Recommendation

3   will go under advisement on that date.

4       IT IS SO ORDERED.

5                       Dated this  7th   day of  November     , 2006.

6

7

8                                    /s/ Dennis James Hubel
                                    Dennis James Hubel
9                                   United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28